Kirkpatrick C. J.
This is a writ of error from the Middlesex Pleas, upon upon two bills of exception, taken at the trial of this cause,
The plaintiffs kept a lumber-yard in the city of NewBruns*wic/c. The defendant was building a house there, and had employed one David Hagar, as his carpenter. In order that the lumber, for the building, might be skilfully selected, and the proper quantities purchased, Hagar was sent, from time to time, to the lumber yard, to make such selection and purchase; and the parcels purchased were charged, in the plaintiffs’ books of account, against the defendant, as taken away, per David Hagar.
After the plaintiffs, at the trial, had proved and exhibited their books of account, containing these charges, they called the said David Hagar, as a witness, to prove the facts above stated; and to fortify the charges in their books. To the admission of this witness, for this purpose, it was objected, by the defendant, and the objection was sustained by the court, and the testimony rejected.
This is the subject of the first bill of exception; and I am wholly at a loss to discover, upon what ground the court placed their opinion.
- The plaintiffs’ books of account, if they were evidence at all, were evidence of the sale and delivery of the articles to the defendant, and the note shewing that they were taken away per David Hagar, is a particularity which rather adds to, than detracts from, their credit; it is a particularity, too, pretty common among dealers, especially in the small way, in order to give the greater satisfaction to their customers. Now, that this David Hagar, who was sent for the lumber, to whom it was delivered, who carried it away, and worked it up in the defendant’s building, should not be admitted as a witness, would be a strange doctrine. He had no interest. A judgment, on whichsoever side it might be, upon the state of facts now developed, could never be given in evi *883 donee against him, or, in any way, subject him to an action upon this entry. The book does not import, nor is there any evidence, that the credit was at all given to llagar, or to the defendant upon llagada word or representation, or any thing that he had said ; it is, therefore, to be taken, that it was given upon the personal application of the defendant himself, and upon the plaintiffs' own knowledge of his circumstances, llagar, therefore, being in no way interested, was a lawful witness; and certainly the subject matter to be proved was lawful. For though the books, themselves, might have been considered as sufficient evidence of the sale and delivery of the articles, to the defendant, yet a *party may always give other evidence to corroborate his books, and to strengthen his charges against any individual. Upon this objection, therefore, presented on this stage of the trial, I think the court were mistaken in the law.
Again. It appeared, from the plaintiff’s entries, that the first parcel of the lumber was delivered on the 19th of July, 1814, and the last on the 15th of November, in the same year; and upon the production of their leger, to which this account had been transferred, there appeared, on the credit side of the account, this entry, viz. 1814. Deer. 5, By David llagada note, which, when paid, will be for this account in full, $242 36 It appeared, further, that this note had been put into the bank for collection, by the plaintiff, and again withdrawn at the request of David Hangar, and that the said David Uagar wus in credit and doing business till some time in January or February, 1816, when he made an assignment of his property, and went to gaol.
The plaintiff then offered to prove, by the said David, llagar, that at the time of the making of the said note, and ever since, he was and has been, unable to pay his debts; that the plaintiffs called upon him for payment, when the note became due, but that he could not, and did not pay it. To this testimony the defendant objected, because the said David llagar, was interested in the event of the suit, and the court sustained the objection and rejected the witness. And in this, upon the case now before them, it appears to me, they judged rightly.
*884 David Hagar had given his note for this money. His assignment of his property and his going to gaol, even if he had taken the benefit of the insolvent laws, does not discharge him from the debt; but if by his testimony, he can procure a verdict to be rendered against the de? fondant, and fix it upon him, he is then exonerated, fop the plaintiff cannot recover twice for the same thing; it would be an immediate discharge from a dipect and positive liability, and that has always been considered as a direct interest. Upon the matter contained in the second bill of exception, therefore, there is no error.
But even if it were otherwise, and the court had erred in this last, too, as I think they did in the first objection? it would be no ground to reverse the judgment. It is not enough, for this purpose, that the court should have erred, they must have erred in *a material point; the testimony rejected, must be such as might lawfully have produced a different verdict. Now that is not the case here; for admitting every thing which the plaintiffs offered to prove by this witness, still they are not entitled to recover, (a)
When Hagar gave his note for this money, to the plaintiffs, it became a fair charge in his favour, against the defendant, and after the day of payment, and no notice of a demand or refusal, the defendant had .a right to presume it paid, and to settle his account with Hagar accordingly. In the reason of the thing, the defendant stands precisely in the situation of an endorser. When the plaintiffs accepted this note, therefore, in full of the account, if paid, the construction which the law raises upon that condition, if paid, (if, indeed, it considers it as a condition at all, of which I Very much doubt); is, that they shall use due diligence to obtain payment from Hagar, when the note becomes due, and if not paid, they shall give the defendant notice of such pon-payment, and transfer, to him the note, that he may have ah opportunity of recovering it himself, *885 Here, instead of using due diligence, they withdrew the note from the bank, where it liad been placed for lection, at the request of llagar ; they gave the defendant no notice of the non-payment, at the day; they retained the note, in tlieir hands, eighteen months, and more, while he, llagar, was in credit and doing business, thereby giving him a new credit, and taking the risk upon themselves. If the money is lost, therefore, it is by their negligence, and the loss must fall upon them, and not upon the defendant.
From this view of the case, I think the judgment must be affirmed.
Rossell J. concurred.
Southard J.
This was an action of assumpsit for goods, &c, and plea of the general issue. At the trial, the plaintiffs proved their book of original entries ; and that they were trading under the firm of Ayres & Vandoren. The bill consisted of boards, shingles, and scantlings, amounting to about $240; all of which appeared, by the books of the firm, to be regularly charged against the defendant; and about one-third of it, was charged to defendant, “per David llagar.” After exhibiting the books to the jury, the plaintiffs offered David Hagar, as a witness, to prove, that at the date of the accounts, he was a carpenter, in the em*ploy of the defendant, who ordered him to go to plaintiff’s lumber-yard, and receive the several articles mentioned in the account, as received by witness, and have them charged to him; and that he did go and receive them, and work them up, for defendant, upon his house. Rut this witness was objected to, and rejected, on the ground, that he could not prove his own agency. Upon this rejection, a bill of exception was taken, and this presents the first question raised upon this Avrit.
I think it is perfectly manifest, that the court erred in ^ejecting this witness. So far as the evidence had proceeded, he appeared, merely, as the agent or servant of the defendant, in making the purchases; as such, he was clearly competent. Bul. 289. Peake 105, &c. &c.
*886 After the rejection of Hager, the plaintiff submitted his -case upon his books, without further evidence.
The defendant then called upon the plaintiffs, and they produced, according to previous notice, a note, in the common form, executed by Hagar, to the plaintiffs; and also their leger, in which, on the credit side cif the defendant’s account, was the following item. “ 1814, Decr. 5. By David Hagar’s note, which, when paid, will be for this account, in full. $242.36.” J. Cortelyou also swore, that he had a conversation with defendant and Ayers, one of the plaintiffs, in March or April, 1816, in which defendant asked Ayres, why he had sued, or was going to sue him ? Ayres answered, “ for the account.” Defendant said, why did you take the note of David Hagar, for the money ? Ayres replied, he was just as willing to take the note of Hagar, as of the plaintiff; for then, if he could not get the money from one of them, he could from the other. He added, that the note had been put in the bank, and withdrawn before it was due, at Hagafs request, who was hard run for money, and that it was a very difficult time to get money. The witness added, that when the note became due, he considered Hagar as solvent, and until the day before he assigned his property to assignees, which took place in January or February, 1816 ; witness trusted him only a few weeks before that time, for a set of silver spoons, and lost the price of them. Here the defendant rested; and before we proceed further in the case, it will be proper to determine .and establish the effect of this evidence.
The note of Hagar was for the whole account, as well what *he received for defendant, as what defendant received, without his agency. It was given by him for the amount of defendant’s debt. What was the effect of this? It did not, of itself, destroy this account. Without other proof, we are not to conclude, that it was such a payment, that the original debt could not be resorted to. It may have been either |a payment or security; and we must judge, from the evidence we have, which it was. The probability is, that it was a security, because we can see no reason why Hagar should pay Vanlieu’s debt; or why the plaintiff should sooner trust Hagar than Vanlieu. *887 The entry on the book, in its terms and fair import, confirms the probability : “ which, when paid, will be for this account in full.” It is not now a payment; it will be at some future period. At what period? When paid, and therefore, not until paid. If never paid, then never a payment. But a payment of what ? Not of itself, but of the account. If never paid, the account stands undischarged. But undischarged against whom ? Against the person to whom it is charged; against Vanlieu, not against Hagar. This note, then, was not an absolute payment ; it was only a security, and the entry is made in the only way in 'which the plaintiffs could make it, in justice to the defendant and themselves: in the way in which all our merchants, I believe, make the entries, when they lake a note for an account. If the note is lost, or difficulty arises with it, the account is still their protection. The declaration of the plaintiffs are also in accordance with the idea that this note was security: “I was as willing to take IlagaVs note as yours, for then, if I could not get it of one, I could of the other.” In other words, I was willing to have two, instead of one, bound for the account; and this could not be, if the account was discharged, and the defendant for ever freed. Again, the taking of the note out of the bank, was no injury to either, if llagar was security only. Indeed, it could in no light injure Vanlieu. If it was payment, then it could not affect him, let it be used as it might. If it was security, Vanlieu had no right to complain, that the creditor would not compel his security to pay his debt, before he resorted to him. Nor could Hagar complain of this act. The holder of the note had a light to use it as he pleased. It was not an endorsed note. No notice, no prosecution of it, was necessary to bind either the maker or third per*son. He might use it as he pleased ; even discharge it, and the defendant ivould still be bound.
So far then, as we have proceeded, the defendant is a debtor, unrelieved by any assumpsit of Hagar. Hagar is a security, and, as such, liable to pay, if the plaintiff fail to recover of the defendant; and, had the cause rested here, I do not see. how it was possible, for the jury, to avoid a verdict for the plaintiff, upon the evidence.
*888 The plaintiff, by way, I presume, of answer, to the eviof defendant, offered Hagar again, to prove, that at the date of the note, he was insolvent, and had so con-Untied, ever since; that the plaintiff had demanded payment, when the note became due, and tried eVery effort to get the money of him, but could not; he was not able to pay. The defendant again objected to him, and he was again declared incompetent. And if the view which I have taken of the case, be correct, he was interested and incompetent. He was interested to the amount of the claim. He wag obliged to pay, if defendant did not. It does not alter this view of the matter, that he had assigned his property, and taken the benefit of the insolvent laws. That only freed his person from imprisonment, but left the claim in force, and his property, if he should obtain any, liable.
It does not appear, from the case, whether there was more evidence. If there was not, I think great injustice has been done by the verdict. The evidence was all on plaintiff’s side; and I see nothing to call their claim in question. But there might have been other evidence, and are upon a writ of error, where an inquiry into the propriety of the verdict, does not seem to be proper; but where we must judge, upon the errors in the record.
In review of the case, I think that the court was right in the last bill of exception; that they were wrong in the first. And the only serious doubt, which I have felt, has been, whether, upon a writ of error, Where the court erred on the first bill, and it appeared, by the second, that there were facts, which, if before them, would have justified their first opinion, it was right.still to reverse. But I do not see that this is proper. It would be shutting our eyes upon the law of the whole case, taken together; and it would do no good to send back a case¿ because a witness was not sworn, when it appears, that he is incompetent. I am, therefore, constrained to unite in affirming the judgment.
Judgment affirmed.

 Smith vs. Ruecastle, 2 Hal. 367. Campfield vs. Ely, 1 Gr. 153. Den, Steelman vs. Steelman, 1 Har. 66. Princeton Turnpike Co. vs. Gulick, 1 Har. 161. Van Dyke vs. Van Dyke, 2 Har. 478. Rodenbough vs. Rosebury, 4 Zab. 491. Smith ads. Perry, 5 Dutch. 74. Lyons vs. Davis, 1 Vr. 803. Joslin vs. N. J. Car Spring Co., 7 Vr. 142.